IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.  5:05cr36/RS
5:08cv207/RS/MD

VINCENTE GUERRERO-GOMEZ

### REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 and supporting memorandum of law (doc. 169 & 170). The government has filed a response (doc. 180) and the defendant has filed a reply (doc. 181). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

**I. BACKGROUND**

Defendant Vincente Guerrero-Gomez, along with co-defendants Claude Lee Woods, III and Stephanie Renae Terry, was charged in a single count indictment[1] with conspiracy to possess with intent to distribute more than 50 grams of actual methamphetamine and more than 500 grams of a mixture and substance containing methamphetamine. Terry and Woods entered plea agreements and were sentenced to

---

[1] The indictment also included a forfeiture count.

terms of 121 months and life imprisonment, respectively.  Defendant proceeded to trial represented by appointed counsel Spiro T. Kypreos, Esq.  After a two day trial which concluded on July 18, 2006, defendant was found guilty as charged.

In the PSR defendant was held accountable for 907.2 grams of methamphetamine mixture, and 166.64 grams of actual methamphetamine, which converted into 5,147.2 kilograms of marijuana and yielded a base offense level of 34 (PSR ¶ 14, 19).  No further adjustments were made, and defendant's total offense level was 34.  (PSR ¶ 28).  Defendant had a single prior conviction for possession of a narcotic/controlled substance (PSR ¶ 31), and his criminal history category was I.  (PSR ¶ 32).  The applicable guidelines range of 151-188 months became 240 months pursuant to U.S.S.G. §5G1.1 due to defendant's prior felony drug conviction and the resulting application of the statutory mandatory minimum. (PSR ¶ 49 & 50).

Defendant, through counsel, objected to the drug weight attributed to him and to his prior arrest being counted as a felony drug conviction which subjected him to the statutory mandatory minimum.  At sentencing, held on October 12, 2006, defendant expressed confusion about the marijuana equivalency used to calculate his base offense level, and this was explained to him.  (Doc. 150 at 3-5).  There was significant discussion about whether defendant's prior conviction was "final" and whether it could properly be considered for enhancement purposes.  The court ultimately found that it could be. (Doc. 150 at 15-28).  The defendant spoke briefly in allocution, mentioning that he did not see that his attorney had represented him well. (Doc. 150 at 29).  He was sentenced to the statutory mandatory minimum term of 240 months imprisonment.

Defendant appealed, and counsel filed a motion to withdraw along with an *Anders*[2] brief. (Doc. 164).  The Eleventh Circuit's independent examination of the entire record revealed no arguable issues of merit, and it affirmed defendant's conviction and sentence on October 25, 2007.  (*Id.*)

---

[2]*Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

In the present motion, defendant raises two interrelated grounds for relief. He contends that his attorney was constitutionally ineffective and the trial court erred for failing to determine whether defendant was psychologically competent to stand trial. The government opposes the motion in its entirety.

## II. LEGAL ANALYSIS

### Parameters of § 2255 review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *Thomas v. Crosby,* 371 F.3d 782, 811 (11th Cir. 2004); *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See Chandler v. McDonough,* 471 F.3d 1360 (11th Cir. 2006) (citing *Drew v. Dept. of Corrections,* 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore,*

175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."); *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

<u>Legal standards applicable to ineffective assistance of counsel claims</u>

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *Gaskin v. Secretary, Dept. of Corrections,* 494 F.3d 997, 1002 (11th Cir. 2007). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688, 104 S.Ct. at 2065; *see also Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909

F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States,* 518 F.3d 1291, 1301 (11th Cir. 2008); *United States v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003); (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). A

significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629); *United States v. Ross*, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle,* 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

<u>Legal standards applicable to incompetency claims</u>

A defendant who is legally incompetent is "suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a); *Battle v. United States*, 419 F.3d 1292, 1298 (11th Cir. 2005). Conversely, a defendant is competent to stand trial if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding- and ... has a rational as well as factual understanding of the proceedings against him." *Dusky*

*v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed. 2d 824 (1960); *Wright v. Secretary for Dept. Of Corrections,* 278 F.3d 1245, 1256 (11th Cir. 2002); *Card v. Singletary*, 963 F.2d 1440, 1443 (11th Cir. 1992). There are two types of competency claims, procedural and substantive. *Battle*, 419 F.3d at 1298. Procedural claims are also known as *Pate*[3] claims. The trial court violates the Due Process Clause by failing to conduct an inquiry into a defendant's competency to stand trial where the objective facts known to the trial court at the time create a "bona fide doubt" as to mental competency. *Wright*, 278 F.3d at 1256 (citing *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)); *Battle*, 419 F.3d at 1298. Although there are no concrete signs which dictate to a court that further inquiry into the issue of competency is necessary, a defendant's trial demeanor and behavior, as well as prior medical opinions are relevant to the determination. *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Watts v. Singletary*, 87 F.3d 1282, 1287 (11th Cir. 1996). A procedural competency claim that is not raised on appeal is waived. *Battle*, 419 F.3d at 1298.

A defendant's contention that he was tried and convicted while he was, in fact, incompetent, is a substantive competency claim. *Battle,* 419 F.3d at 1298 (citing *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995)). Such a claim does not require a showing that any person, state actor or not, could or should have diagnosed the defendant's incompetency, or that there was objective evidence of the alleged incompetency. *James v. Singletary*, 957 F.2d 1562, 1573 (11th Cir. 1992). In order to establish a substantive incompetency claim, a defendant must demonstrate his incompetency by a preponderance of the evidence; he is entitled to no presumption of incompetency. *James*, 957 F.2d at 1571. Such a claim is not subject to procedural default. *Wright v. Secretary for Dept. of Corrections*, 278 F.3d 1245, 1258-1259 (11th Cir. 2002).

---

[3]*Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

Defendant's case

Defendant contends that counsel failed to recognize that he had a mental health condition and that he "had suffered from psychosis for years." (Doc. 170 at 3). However, to the extent he raises a procedural incompetency claim, many of the signs that he suggests should have alerted counsel of his mental problems do not actually support his position. Defendant notes that his illness was "not discovered" until he was incarcerated at FCC Petersburg after staff recognized his erratic behavior. (*Id.*) It would be fundamentally unfair to charge counsel with the responsibility of identifying defendant's alleged mental instability if no one, including jailers who would have had the opportunity to observe defendant over a period of days or weeks, had failed to recognize any abnormality in his behavior until after his conviction on the federal charges.

Defendant asserts that he made a "plea for help" directly to the court during sentencing. The exchange to which he refers was as follows:

DEFENDANT: Your honor, I would like to speak to the Judge because I had some medicines that I was taking and they took my medicine away.

. . .

THE COURT: Okay

DEFENDANT: The thing was that last year– I mean about a week ago I wound up in the hospital because I was sick, and I was just wondering if I had a right to my medications because they took my medications away. I haven't been getting them.

THE COURT: Which – were these medications he was prescribed in the hospital?

DEFENDANT: Yeah, in the hospital they told me I had to be in treatment.

THE COURT: And who has his medicine?

DEFENDANT: My heart was stopping. The doctor took the papers from the hospital – the hospital papers and stuff, and he said I was fine. But every day I feel bad. I have a fever every day.

THE COURT: Well, has he gone back to the – which facility is he confined to? Here in Bay County?

THE DEFENDANT: In Clayton, – no, in Panama City, Bay County.

THE COURT: Has he gone back on sick call?

DEFENDANT: Yeah, I ask them for help and they tell me that I'm fine, that I'm fine. (Doc. 150 at 35-36). The court then asked the deputy marshal to check with the facility on the status of defendant's prescription medications.

Defendant now asserts in his memorandum that the "treatment" to which he referred was psychological treatment, and further that he "has never understood that the medicine that he takes, even to this day, is not primarily for his heart but to control his mood swings and anxieties, which does slow his heart down to a normal rate whenever he hallucinates as a result of the psychosis." (Doc. 170 at 4). While this may be true, his self-described plea for help can not reasonably be characterized as placing counsel or the court on notice of his alleged mental illness. Defendant further asserts that even with the prescribed medications of Haloperidol (Haldol) and Rispierdone (Risperadal), he has only recently come to terms with the fact that he received a 20 year sentence, rather than 20 months. *Id.* The basis for the defendant's belief that his sentence was 20 months rather than 20 years is perplexing, as defendant's sentence, like all federal sentences, was pronounced in months, not years. The court at sentencing imposed a sentence of 240 months (doc. 150 at 32, 34), and the judgment likewise listed the sentence as 240 months (doc. 121 at 2).

Defendant further asserts that he experienced "one of his bouts with psychosis" in Panama City, on November 19, 2006. (Doc. 170 at 4). Regardless of the severity of this psychotic episode, it occurred after his sentencing, and thus after the time period in which he claims counsel or the court should have recognized his alleged mental deficiencies.

In support of his contention that he has suffered from psychosis for years, defendant cites the trial testimony of Patrolman Robert Andrew Patrick, who testified about defendant's behavior during a traffic stop that occurred in March of 2003. Patrolman Patrick described defendant as sitting in the front seat, looking straight out the front windshield with his hands on his knees, unwilling to make eye contact with the officer. (Doc. 149 at 189). Such passive behavior could obviously be explained by something other than mental illness, such as nervousness or a guilty conscience. Additionally, this

incident occurred over three years before defendant's trial and was not necessarily indicative of his mental capabilities at the time of trial.

Defendant seems to suggest that the district court should have ordered a mental competency examination, as it had reasonable cause to believe that he was not be competent to stand trial. This suggestion is untenable. The evidence offered by defendant in support of his asserted incompetency was insufficient to put counsel or the court on notice that his legal competency was at all questionable. Even if all of the details of defendant's post-conviction conduct and diagnoses as set forth in his memorandum and supporting documentation, including his personal belief about his mental condition at the time of the offense conduct as described in his affidavit, are true, the fact remains that there was no information known to the court that would have indicated a competency inquiry was necessary. As noted by the government, there were no outbursts or misconduct by the defendant during trial, no complaints or comments about the defendant from the two interpreters who worked with defendant during the trial, and his attorney did not raise any issues with the court. In addition, the defendant appeared to respond intelligently and appropriately to questions posed by the court. (Doc. 178 at 6). Comments and questions made by the defendant during sentencing further belie his claim of incompetency. He questioned the reference to marijuana (actually the marijuana equivalency table) in his presentence investigation report, as no marijuana was involved in his case. (Doc. 150 at 3-5). Defendant disputed the jurisdictional basis for being tried in Florida when he had been arrested in Georgia, (*id.* at 5-7), and corrected factual discrepancies in the PSR. (*Id.* at 8). He was able to explain to the court details about previous arrests (*id.* at 16-18, 25-28), and assail counsel's performance in his behalf. (*Id.* at 29). He appeared to be an active participant in the proceedings, and the sentencing transcript reveals no suggestion of abnormal or irrational behavior. Also very telling are defendant's assertions/admissions in his memorandum: "In the interest of the preservation of justice, this court should not rest on the fact that there was *no evidence shown or known to or by the Court that would have indicated that the Movant was suffering from a mental affliction*" (doc. 170 at 8 (emphasis added)) and that "neither the Court or Movant's legal

counsel saw any evidence of mental illness, incompetence, or diminished capacity during the adjudicative process." (Doc. 170 at 9).

Neither counsel nor the court is charged with clairvoyance. It is neither feasible, nor in the interest of judicial economy, nor legally required by the Due Process Clause, to conduct a mental competency evaluation of every defendant who appears in federal court regardless of the lack of suspect indicia of a competency issue. Even assuming this claim is not procedurally defaulted, defendant has failed to establish a procedural due process claim based on the record before the court.

Although defendant's claim appears to be procedural in nature, the court next considers whether he has established a substantive competency claim. To receive a competency hearing pursuant to a substantive claim of actual incompetency, a petitioner must present clear and convincing evidence raising a real, substantial and legitimate doubt as to his incompetency. *James v. Singletary*, 957 F.2d 1562, 1572 n. 15 (11th Cir. 1992) (citations omitted); *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995). "To show entitlement to a postconviction evidentiary hearing on a substantive competency claim 'the standard of proof is high [and] the facts must positively, unequivocally, and clearly generate the legitimate doubt.'" *Medina*, 59 F.3d at 1106 (quoting *Card v. Singletary*, 981 F.2d 481, 484 (11th Cir. 1992)); *Wright v. Secretary for Dept. Of Corrections*, 278 F.3d 1245, 1259 (11th Cir. 2002). "Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." *Wright*, 278 F.3d at 1259 (quoting *Medina*, 59 F.3d at 1107). The same facts outlined above mitigate against a finding of actual incompetency.

The majority of the evidence presented by defendant in his motion reflects upon his mental status post-sentencing, which is not necessarily indicative, much less dispositive, of his competency at trial. Defendant was diagnosed with a mental illness by staff at FCC Petersburg and has been prescribed anti-psychotic medication, which has resulted in improvement in his condition. (Doc. 170 at 3; attachment). Fellow inmates submitted affidavits about defendant's abnormal behavior post-sentencing. (*Id.*) Defendant's own affidavit indicated that he was seeing things and hearing voices when he was arrested,

prosecuted, convicted and sentenced, and that he can not remember many things he has done over the past several years. (*Id.*). He also states that once he realized that his sentence was twenty years rather than twenty months, he became very depressed and did not want to get out of bed, a statement supported by the affidavit of defendant's former cellmate Fernando Nava Anaya. (*Id.*). Finally, he asserts that he does not remember or understand many parts of his trial. (*Id.*)

Defendant's appointed trial counsel, Spiro T. Kypreos, has submitted an affidavit in support of the government's response. (Doc. 178, exh. 1). Mr. Kypreos states that in his 37 years of practice, he has handled well over 3,000 state criminal cases and 100 federal criminal cases, including the representation of defendants who had mental health issues and were incompetent to stand trial. (*Id.* at 1). In such circumstances, he filed the appropriate motions to have these individuals evaluated. (*Id.*). Mr. Kypreos states that the defendant in this case acted normal in his presence at all times, and further, that at all times during his representation defendant was competent. (*Id.*). Mr. Kypreos notes that while defendant now states that he remembered hardly anything about his arrest, when Kypreos spoke to the defendant, he was able to give details surrounding his arrest, including complaints about how he was treated, and what happened before and after. (*Id.* at 1-2). Mr. Kypreos further notes that in the approximately 25 hours he spent with the defendant, his client was "cogent and articulate at all times and exhibited no signs of mental illness whatsoever." (*Id.* at 2). As examples, counsel notes the discussions with defendant about the reason defendant was being tried in Florida, defendant's request that counsel contact the Mexican consulate, and their discussion about the government's plea offer. (*Id.*). Counsel also cites the reference in the PSR that defendant has "no history of mental or emotional problems and no history of treatment for such problems," and notes the substantial and detailed information defendant provided to the probation officer in support of the PSR before concluding that "the defendant clearly demonstrated at all times in my presence in jail conferences and in court proceedings that he was competent to participate in the proceedings." (*Id.* at 3).

The two interpreters who assisted the defendant at trial and sentencing submitted letters explaining that it appeared to them that the defendant understood what he was being told and asked, and that had there been any communication issues or problems, they would have brought this to the attention of the judge. (Doc. 178, exh. 2 & 3). Furthermore, there is no mention in the PSR of any abnormal behavior observed by USPO Lori Masso during her interview of the defendant, and the PSR reflects "no history of mental or emotional problems and no history of treatment for such problems." (PSR ¶ 42).

Defendant makes much of the fact that in its response the government does not disagree that he is *currently* psychotic. Even accepting this as true, defendant's current competency is relevant, but "is not enough to counter the best evidence of what his mental condition was at the only time that counts, which is the time of the trial." *Wright*, 278 F.3d at 1259. In his supporting affidavit, George C. Alexander, Jr., the individual who prepared the defendant's motion and reply, while admitting he is not a mental health professional, reiterates his strong belief that defendant has suffered from psychosis for many years prior to trial. He asserts that the government should at the very least order that defendant be psychiatrically evaluated "to attempt to determine as to when his psychosis may have commenced." The strongest assertion with respect to defendant's competency is that defendant "most likely" was incompetent prior to his arrest and prosecution. (Doc. 181 at 12). The Eleventh Circuit has explained that the best evidence of a defendant's mental state at trial is the evidence of his behavior around that time, particularly how he related to and communicated with others. *Wright*, 278 F.3d at 1259. As noted above, neither defendant's attorney, nor the two interpreters, nor the court nor the probation officer observed any "abnormal" behavior by the defendant. In fact, the record is replete with evidence of defendant's appropriate participation in the proceedings. In support of his claim of incompetence, defendant offers only his affidavit, in which he claims that he was "hearing voices," a claim that is totally uncorroborated by any other record evidence. In light of the record as a whole, defendant simply has not met his burden of proof. *Wright*, 278 F.3d at 1259 (Even the fact that a defendant suffers from chronic schizophrenia, the effects of which have come and gone over the years, was found to be insufficient to create

a "real, substantial, and legitimate doubt" as to whether he was competent to stand trial in the past).

In sum, defendant has failed to show either that counsel was constitutionally ineffective for his failure to identify his alleged incompetency to stand trial or request a competency hearing. He has likewise failed to show that there was trial court error or a violation of his procedural or substantive due process rights due to the trial court's failure to hold such a hearing.

Based on the foregoing, it is respectfully RECOMMENDED:
The motion to vacate, set aside, or correct sentence (doc. 169) be DENIED.

At Pensacola, Florida, this 8th day of May, 2009.


/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).